## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MAINE

| | |
|---|---|
| IN RE:<br><br>DIMITRI J. BOURAS,<br><br>        Debtor. | Chapter 13<br>Case No.: 25-20143 |
| ROBERT MELVIN and ARUNDEL<br>MARKET, LLC,<br><br>        Plaintiffs,<br><br>v.<br><br>DIMITRI J. BOURAS,<br><br>        Defendant. | Adv. Proc. No. 25-___ |

### ADVERSARY COMPLAINT OBJECTING TO DISCHARGE AND FOR DECLARATORY JUDGMENT REGARDING NON-DISCHARGEABILITY OF CERTAIN DEBTS

Plaintiffs, Robert Melvin ("**Melvin**") and Arundel Market, LLC (collectively, with Melvin, "**Plaintiffs**"), creditors in the above-captioned Chapter 13 case, by and through counsel, file this Adversary Complaint against debtor and defendant, Dimitri J. Bouras ("**Defendant**"), objecting to the discharge of Defendant as to certain debts owed by Defendant to Plaintiffs and for a declaratory judgment of non-dischargeability regarding such debts pursuant to § 523(a) of Title 11 of the United States Code (the "**Bankruptcy Code**"), and allege as follows:

### INTRODUCTORY STATEMENT

1.     This adversary proceeding arises from deliberate and egregious fraud perpetrated by Defendant, his father, James D. Bouras (now deceased), and Defendant's business, Charter

Financial Services, LLC ("**CFS**").  Bouras entered into a fiduciary relationship with Plaintiffs to market the business of Arundel Market, LLC and, during the fiduciary relationship, obtained confidential financial information, and fraudulently and without authority entered into a Secured Merchant Agreement with Yellowstone Capital, fraudulently signed a Security Agreement and Guaranty, and submitted a Confession of Judgment resulting in liability to Arundel Market, LLC in the amount of $43,500, all without the knowledge or consent of Plaintiffs.

2.       Upon information and belief, Defendant is the sole member and manager of CFS. James D. Bouras ("**Bouras**"), Defendant's father, acted as a registered agent for CFS.  On May 30, 2025, the Superior Court entered judgment against CFS for fraud, breach of fiduciary duty, abuse of process, breach of contract, reputational torts, tortious interference, intentional infliction of emotional distress, and punitive damages.   The Superior Court awarded $63,262 in compensatory damages, $10,000 in emotional distress damages to Melvin, and $35,000 in punitive damages for "extreme and outrageous conduct."

3.       Based on the court's findings, which are entitled to collateral estoppel effect in this proceeding, and other allegations as set forth herein, Plaintiffs' claims against Defendant are non-dischargeable under § 523(a)(6) of the Bankruptcy Code.

## JURISDICTION AND VENUE

4.       The Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§157(a) and 1334(b) and D. Me. Local R. 83.6(a), pursuant to which all cases filed in Maine under the Bankruptcy Code, and civil proceedings arising under the Bankruptcy Code, or arising in or are related to cases under the Bankruptcy Code, are referred to the bankruptcy judges of this district.

5.       Venue is proper pursuant to 28 U.S.C. § 1409(a).

6.      This adversary proceeding is a court proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) because it concerns a determination of dischargeability of particular debts.

## PARTIES

7.      Plaintiff, Robert Melvin, is a resident of the state of Maine with an address of P.O. Box 1202, Alfred, Maine.

8.      Melvin is the sole member manager of Arundel Market, LLC, a limited liability company doing business in Arundel, Maine.

9.      Defendant, Dimitri Bouras, is the debtor in Chapter 13 Case No. 25-20143.

## FACTUAL ALLEGATIONS

**A.      The Bankruptcy Case.**

10.      Defendant filed a Chapter 13 petition on June 18, 2025. [Dkt. No. 1].

11.      Defendant previously filed a petition for relief under Chapter 13 on June 13, 2019.

12.      Upon information and belief, that Chapter 13 proceeding was dismissed on July 31, 2024, for noncompliance with the Chapter 13 Plan.

**B.      Maine Litigation and Punitive Damages.**

13.      Plaintiffs filed a Complaint against Dimitri J. Bouras, his father, James D. Bouras, and CFS on January 5, 2018.

14.      The Complaint alleged Count I (Fraud), Count II (Breach of Fiduciary Duty), Count III (Abuse of Process), Count IV (Breach of Contract), Count V (Reputational Torts), Count VI (Tortious Interference), Count VII (Intentional Infliction of Emotional Distress), and Count VIII (Punitive Damages).

3

15.     On February 3, 2018, Defendant filed a Motion to Dismiss Plaintiffs' Complaint. *See* Order on Pending Motions, p.2 (attached hereto as **Exhibit 1**).

16.     On March 4, 2019, the Court issued an Order Denying Defendant's Motion to Dismiss. *Id.*

17.     Defendant failed to file an answer to the Complaint after Defendant's Motion to Dismiss was denied as required under M.R. Civ. P. 12(a). *Id.*

18.     On June 13, 2019, the Superior Court issued a Default Judgment against James D. Bouras and CFS.

19.     On June 13, 2019, Defendant filed his first Chapter 13 petition.

20.     On August 12, 2019, Plaintiffs filed a Motion for a Default Judgment against Defendant unaware of his bankruptcy filing.

21.     On August 15, 2019, Defendant filed a second Motion to Dismiss the Complaint by Plaintiffs. *Id.,* p.3.

22.     On August 19, 2019, upon learning that Defendant had filed his first Chapter 13 bankruptcy [Case No. 19-20295], Plaintiffs withdrew their Motion for Default Judgment.

23.     On July 31, 2024, Defendant's first Chapter 13 case was dismissed.

24.     On January 28, 2025, the York County Superior Court entered a procedural order requiring Defendant to provide a status report of the bankruptcy matter within 21 days. Defendant failed to file a status report. *See* Order on Pending Motions, p.3.

25.     On May 7, 2025, the Superior Court held a damage hearing related to defaulted defendant CFS and issued a judgment against CFS on May 30, 2025. *See* Judgment Against Defendant Charter Financial Services, LLC (attached hereto as **Exhibit 2**).

26.     The Superior Court entered Judgment on all counts of the Complaint, including fraud and punitive damages, awarding damages of $63,262.12, emotional distress damages to Robert Melvin of $10,000, and, due to "extreme and outrageous conduct," awarded punitive damages in the amount of $35,000. *Id.*, pp.10-11.

27.     On May 9, 2025, the Superior Court ordered the stay as to Defendant to be vacated and allowed Plaintiffs 21 days to file an opposition to Defendant's second Motion to Dismiss. *See* Order on Pending Motions, p.3.

28.     On May 14, 2025, Plaintiffs filed a Motion for Default Judgment against Defendant pursuant to M.R. Civ. P. 55(b). *Id.*

29.     On June 23, 2025, the Superior Court denied Defendant's motion to dismiss (after construing it as a motion for reconsideration), which had been originally denied by the court on March 24, 2019. *Id.*, p.4.

30.     The Superior Court also entered a Default Judgment against Defendant. *Id.*, pp.5-6.

31.     In its Judgment against CFS, the Superior Court found as follows:

The Court finds and concludes that Bouras's actions, individually and as an agent of CFS, were egregious and violated his fiduciary duty to Melvin as a trusted business advisor. The libel Bouras, acting as an agent of CFS, perpetrated against Arundel Market, LLC and Melvin, had a shocking impact on his business and Melvin's reputation in the community. He experienced extreme despair, shame, and embarrassment in explaining the fraud he fell victim to. The Court further finds that Bouras, as an agent of CFS, deceived and misrepresented his true intentions and acted fraudulently and maliciously.

*See* Judgment Against Charter Financial Services, LLC, p.9.

32.     James Bouras represented that he was a member of CFS. *See* Judgment against Defendant Charter Financial Services, LLC, ¶11.

33.     While representing Plaintiffs in the sale of his business, James Bouras insisted that the name of the buyer of Arundel Market, LLC was confidential but later disclosed that he was, in fact purchaser, and his son, Defendant, owned and operated convenience stores in Biddeford, Maine. *Id.*, ¶12.

34.     On May 28, 2016, James Bouras, acting as the registered agent of CFS, filed an annual statement with the Secretary of State describing the business as "operation of convenience stores selling convenience items beer, wine, tobacco, fast food and pizza for take-out and delivery." *Id.*, ¶13.

35.     Defendant, with a residence listed at 3 Grier Road, Kennebunkport, Maine, was listed in the records with the Secretary of State as a "member/manager" of CFS. *Id.*, ¶14.

36.     On September 26, 2016, Bouras filed a "Statement of Intention to Transact Business Under an Assumed or Fictitious Name" on behalf of CFS. The assumed fictitious name was "Arundel Markets." *Id.*, ¶15.

37.     Plaintiffs did not know or authorize Bouras to file a Statement of Intent to do business as Arundel Markets. *Id.*, ¶16.

38.     On October 20, 2016, Bouras fraudulently executed a Secured Merchant Agreement with Yellowstone Capital, LLC ("**YSC**"). This was done without Plaintiffs' knowledge or authorization. *Id.*, ¶17.

39.     On October 20, 2016, Bouras fraudulently executed a Perfected Security Agreement and Guaranty between Arundel Market, LLC and YSC, giving YSC a security interest in all assets of Arundel Market, LLC. *Id.*, ¶18.

40.     Bouras also fraudulently executed an Addendum to the Secured Merchant Agreement authorizing YSC to make automatic withdrawals from Arundel Market, LLC through its Kennebunk Savings Bank business account.  *Id.*, ¶20.

41.     On October 31, 2016, Bouras signed an Affidavit of Confession of Judgment that was filed in the County of Rockland, Supreme Court, State of New York, in the matter of *Yellowstone Capital, LLC v. Arundel Market, LLC*, *d/b/a Arundel Market and James D. Bouras.* (Index No. 35240/16).  *Id.*, ¶21.

42.     Bouras signed the Confession of Judgment without authority or knowledge of Melvin committing Arundel Market, LLC to a judgment in the amount of $43,500 with additional costs and legal fees for a total of $51,971.80.  Bouras fraudulently represented himself as a member of Arundel Market, LLC and personally guaranteed the debt.  *Id.*, ¶22.

43.     On November 4, 2016, YSC deposited $28,866 into the Kennebunk Savings Bank business account of Arundel Market, LLC by wire transfer.  Bouras claimed that YSC placed the money in the wrong account and that the money was intended to facilitate the purchase of Arundel Market, LLC.  *Id.*, ¶23.

44.     On November 7, 2016, Melvin obtained a Treasurer's Check for $28,866 to convey the YSC deposit to Bouras, not understanding, at that time, this was all part of James Bouras's fraudulent plan.  *Id.*, ¶24.

45.     On November 7, 2016, YSC began automatically withdrawing $435 from the Arundel Market, LLC business account.   YSC automatically withdrew $2,264.29 without Melvin's knowledge or consent.  *Id.*, ¶25.

46.     When Melvin learned about the automatic withdrawals, he confronted Bouras, who insisted it was an honest mistake and told Melvin that's how business works.  Melvin reported the fraud to the York County Sheriff's Department. *Id*., ¶26.

47.     On August 13, 2025, Robert Melvin and Arundel Market, LLC filed Proof of Claim No. 8 in the sum of $108,262.12.

## COUNT I.  DECLARATORY JUDGMENT

48.     Plaintiffs repeat and incorporate by reference the foregoing paragraphs as if fully restated herein.

49.     Section 523(a)(6) of the Bankruptcy Code provides: "(a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]"

50.     Defendant, acting individually and as agent for, and member and manager of, CFS, caused willful and malicious injury to Plaintiffs through the scheme set forth above, resulting in damage to Plaintiffs, including as set forth in Proof of Claim No. 8.

51.     The Judgment against CFS and the Default Judgment against Defendant, including the factual findings and conclusions of the Superior Court therein, establish willful and malicious injury by Defendant against Plaintiffs and are entitled to estoppel effect in this proceeding.

52.     Accordingly, Plaintiffs are entitled to declaratory judgment that their claims against Defendant, as set forth in Proof of Claim No. 8, are nondischargeable debts as to Defendant under § 523(a)(6) of the Bankruptcy Code.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests this Court enter an order granting relief as to Count I (Declaratory Judgment) by declaring that the damages, as set forth in Proof of Claim No. 8, are nondischargeable debts under § 523(a)(6) of the Bankruptcy Code, and such other and further relief as this Court deems just and proper, including, but not limited to, pre and post-judgment interest, attorneys' fees, and other costs incurred in relation to the collection of the above-referenced debts to the fully extent permitted by applicable law.

Dated: September 5, 2025

**Respectfully submitted**:

*/s/ Adam R. Prescott*
Adam R. Prescott, Esq.
**Bernstein, Shur, Sawyer & Nelson, P.A.**
100 Middle Street
PO Box 9729
Portland, ME 04104-5029
aprescott@bernsteinshur.com
Tel: (207) 228-7145

*Attorney for Plaintiffs*

B1040 (FORM 1040) (12/24)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br><br>Robert Melvin and<br>Arundel Market, LLC, | DEFENDANTS<br><br>Dimitri J. Bouras |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Adam R. Prescott, Esq.<br>Bernstein, Shur, Sawyer & Nelson, P.A.<br>100 Middle Street, P.O. Box 9729<br>Portland, ME 04101<br>207-774-1200 | ATTORNEYS (If Known) |

| PARTY (Check One Box Only)<br>☐ Debtor           ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor        ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☒ Debtor           ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor        ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Declaratory Judgment of non-dischargeability

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(a) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(e) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(f) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☒ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(g) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(h) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(i) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(j) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $       Not yet determined |

Other Relief Sought

B1040 (FORM 1040) (12/24)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Dimitri J. Bouras | BANKRUPTCY CASE NO.<br>25-20143 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Maine | DIVISION OFFICE | NAME OF JUDGE<br>Peter G. Cary |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Adam R. Prescott | | |
| DATE<br><br>September 5, 2025 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Adam R. Prescott | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

EXHIBIT

1

STATE OF MAINE                          SUPERIOR COURT
YORK, ss.                               CIVIL ACTION
                                        Docket No. CV-2018-00003


ROBERT MELVIN and           )
ARUNDEL MARKET, LLC,        )
                            )
            Plaintiffs,     )           **JUDGMENT AGAINST**
                            )           **DEFENDANT**
    v.                      )           **CHARTER FINANCIAL**
                            )           **SERVICES, LLC**
JAMES D. BOURAS,            )
DIMITRI J. BOURAS, and      )
CHARTER FINANCIAL SERVICES, )
LLC,                        )

            Defendants.


    Upon due and proper notice, the above-captioned matter came before the

Court on May 7, 2025, for a hearing on damages because of a Default Judgment

entered against Defendants James D. Bouras ("Bouras") individually and Charter

Financial Services, LLC ("CFS") (collectively "Defendants") on June 13, 2019. CFS's

sole member is Bouras's son, Defendant Dimitri J. Bouras ("Dimitri"). In response to

the Complaint, Dimitri filed for Chapter 13 bankruptcy protection. The Chapter 13

filing by Dimitri (Case 19-20295) was dismissed July 31, 2024.[1] On January 28, 2025,

the Court issued a Procedural Order requiring Dimitri to provide a status report of the

---

[1] The status of the bankruptcy case was only learned by the Court at the damages hearing when Plaintiffs' attorney presented the Court with a Bankruptcy Dismissal Notice.

RECEIVED

JUN 0 4 2025

Gene R. Libby, Esq.

bankruptcy matter within 21 days. Dimitri failed to file a written status report. On March 20, 2025, the Court, at Plaintiffs' request, scheduled a damages hearing on the default judgment issued against Bouras and CFS. On May 7, 2025, a damages hearing was held. In attendance was Plaintiffs' attorney Gene Libby and Plaintiff Robert Melvin ("Melvin") individually and on behalf of Plaintiff Arundel Market, LLC (collectively "Plaintiffs"). CFS failed to appear.

As a preliminary matter at the commencement of the hearing, the Court informed Plaintiffs' attorney that it had come to the Court's attention that Bouras had recently died. The Court presented a copy of Bouras's obituary to Plaintiffs' attorney who was unaware of Bouras's passing. The Court informed Plaintiffs and their attorney that "the Court was very hesitant, if not adamant ... not to move forward" with the damages hearing against Bouras without a suggestion of death being filed with the Court and the proper substitution of Bouras's estate for Bouras as a party defendant. (Damages Hr'g at 01:45.) The Court had a comprehensive colloquy on the record with Plaintiffs' attorney and, although Plaintiffs wished not to have to return for a second damages hearing, it was clearly stated that the damages hearing would move forward only against CFS.[2]

---

[2] At the Damages Hearing, the Court asked, "and then Attorney Libby you're suggesting that we'll just be proceeding with a damages hearing with respect to the LLC?" Counsel for the Plaintiffs replied, "Yes." (Damages Hr'g May 7, 2025, at 16:05.)

Melvin testified. The Court makes the following findings of fact based on his testimony and Plaintiffs' Exhibits 1-5, 7-20, and 22-27 that were admitted into evidence. The Court also takes judicial notice of the previous orders entered in this case.

## FACTUAL FINDINGS

1. Melvin is the sole member of Arundel Market, LLC.

2. Arundel Market, LLC operated a convenience store in Arundel, Maine.

3. Melvin is also self-employed as a home builder operating Arundel Homes, LLC.

4. In or about 2015, Melvin began to explore opportunities to lease Arundel Market and retain ownership of the real estate. He contacted Bouras, who represented himself as a business broker with substantial experience to assist him finding a lessee/operator for Arundel Market.

5. Melvin placed his confidence and trust in Bouras and provided him sensitive and confidential business information.

6. In the spring of 2016, Bouras represented to Melvin that he had a potential buyer, AMWW, LLC. Melvin signed a Letter of Intent with AMWW, LLC ("AMWM") on May 21, 2016, that was signed by Bouras as its duly authorized representative.

7. AMWM agreed to lease the convenience store at an annual rate of $21,100.

3

8.      Melvin provided Kennebunk Savings Bank monthly checking account statements for Arundel Market, LLC to Bouras who represented that this financial information was necessary to establish cash flow for the prospective buyer.

9.      In October 2016, Bouras presented a "Bill of Sale" with a different proposed buyer, Charter United, LLC. Bouras signed the Bill of Sale as a member of Charter United, LLC. Bouras presented a Bill of Sale to Melvin in October 2016, although it was dated and signed June 22, 2016.

10.     Melvin testified that AMWM and Charter United, LLC were fictitious business entities that were not chartered by the Maine Secretary of State. However, at all relevant times, Melvin believed and relied upon the representations of Bouras that AMWM and Charter United, LLC were legal and viable business entities.

11.     Bouras also represented that he was a member of CFS.

12.     Bouras told Melvin the name of the buyer was confidential, but later disclosed that Bouras was the purchaser and that his son, Dimitri, owned and operated convenience stores in Biddeford, Maine.

13.     Bouras also acted as the registered agent for CFS. On May 28, 2016, he filed an Annual Statement with the Secretary of State describing the business as "operation of convenience stores selling convenience items beer, wine, tobacco, fast food and pizza for take-out and delivery."

14.      Dimitri, of 3 Grier Road, Kennebunkport, Maine, is listed in the records of

the Secretary of State as a member/ manager of CFS.

15.      On September 26, 2016, Bouras filed a "Statement of Intention to Transact

Business Under an Assumed or Fictitious Name" on behalf of CFS. The assumed fictitious

name was "Arundel Markets" located at 1144 Portland Road, Arundel, Maine.

16.      Melvin credibly testified that he did not know about or authorize Bouras to

file a Statement of Intent to do Business as Arundel Markets.[3]

17.      On October 20, 2016, Bouras fraudulently executed a Secured Merchant

Agreement with Yellowstone Capital, LLC ("YSC"). Bouras entered this and other

agreements with YSC in the name of Arundel Market, LLC. This was done without the

knowledge or authorization of Melvin.

18.      Also on October 20, 2016, Bouras fraudulently executed a perfected Security

Agreement and Guaranty between Arundel Market, LLC and YSC, giving YSC a security

interest in all assets of Arundel Market, LLC.

19.      YSC filed a Uniform Commercial Code Financing Statement in the State of

---

[3] It is well settled under Maine law that credibility is for the fact-finder to determine. *In re Robin T.*, 651 A.2d 337, 339 (Me. 1994); *State v Walker*, 506 A.2d 1143, 1149 (Me. 1986); *Rice v. Sebasticook Valley Hospital*, 487 A.2d 639, 641 (Me. 1985). The court, as fact-finder, is not obliged to accept a [witness'] testimony about a particular fact, if the court does not find the witness to be credible. *See Hanna v. Hildings*, 2002 ME 107, ¶ 7; *Westleigh v. Conger*, 2000 ME 134, ¶ 11. In assessing credibility "the fact-finder, is responsible for assessing the credibility of the witnesses, and may selectively accept, reject, or combine testimony in any way". *Jenkins, Inc. v. Walsh Bros., Inc.*, 2001 ME 98, ¶ 22, 776 A.2d 1229 (quoting *State v. Ricky G.*, 2000 ME 190, ¶ 5, 760 A.2d 1065).

Maine, perfecting its security interest against all Arundel Market, LLC assets.

20.    Bouras also fraudulently executed an Addendum to the Secured Merchant

Agreement authorizing YSC to make automatic withdrawals from Arundel Market,

LLC's Kennebunk Savings business account.

21.    On October 31, 2016, Bouras signed an Affidavit of Confession of Judgment

regarding the Merchant Agreement and filed it in the County of Rockland, Supreme

Court, State of New York in the matter of *Yellowstone Capital, LLC v. Arundel Market, LLC*

*d/b/a Arundel Market and James D. Bouras.* (Index No. 35240/16.)

22.    Bouras signed a Confession of Judgment without authority or knowledge

of Melvin committing Arundel Market, LLC to a judgment in the amount of $43,500 with

additional costs and legal fees for a total of $51,971.80. Bouras fraudulently represented

himself as a member of Arundel Market, LLC, and personally guaranteed the debt.

23.    On November 4, 2016, YSC deposited $28,866 into the Kennebunk Savings

Arundel Market, LLC business account by wire transfer. Bouras claimed that YSC had

placed the money in the wrong account and the money was intended for him to facilitate

the purchase of Arundel Market.

24.    On November 7, 2016, Melvin obtained a treasurer's check for $28,866 to

convey the money to Bouras not understanding, at that time, this was all part of Bouras's

fraudulent plan.

25.   Also on November 7, 2016, YSC began automatically withdrawing $435 from the Arundel Market, LLC business account. YSC automatically withdrew $2,264.29 without Melvin's knowledge or consent.

26.   Melvin confronted Bouras when the automatic deductions appeared in the business checking account. Melvin ended their business relationship even though Bouras insisted it was an honest mistake and told Melvin that's just how business works. Melvin reported the fraud to the York County Sheriff's Department.

27.   Melvin did not become aware of the Confession of Judgment until December 2, 2016, when a Notice of Entry of Judgment was sent to him at the business address.

28.   All of the agreements between Arundel Market, LLC were signed by Bouras as "managing member." Bouras also signed the Agreements individually as Guarantor No. 1. All the Agreements with YSC are attached at Exhibit A-F to the Complaint dated January 5, 2018.

29.   At all relevant times, Bouras acted as an agent of CFS.

30.   At all relevant times, there was a fiduciary relationship between Melvin and Bouras.

31.   Melvin spent countless hours with the bank and creditors to undo the disastrous financial impact of Bouras's fraudulent scheme. During this period, Melvin

7

paid his sister $1,500 to assist in operating Arundel Home Builders due to all the time he was devoting to ameliorating the impact of the fraudulent scheme and restoring his financial accounts.

32.   ~~As a result of the actions of Bouras and CFS, Melvin and Arundel Market,~~ LLC incurred reasonable and necessary legal fees and costs.

### DAMAGES

The Complaint alleges Count I—Fraud, Count II—Breach of Fiduciary Duty, Count III—Abuse of Process, Count IV –Breach of Contract, Count V—Reputational Torts, Count VI—Tortuous Interference, Count VII—Intentional Infliction of Emotional Distress, and Count VIII—Punitive Damages. Melvin and his father were among the original incorporators of Kennebunk Savings Bank. He testified, at times emotionally, that the fraud perpetrated by Bouras and CFS caused him shame and embarrassment in the community and damage to his reputation as a businessman. Melvin also credibly testified that he suffered stress, anxiety, loss of sleep, and elevated blood pressure treated by his physician, during this period. Melvin devoted between 12-15 hours per week for a period of three months to address the havoc and damage the fraudulent scheme had caused his business. YSC had levied all his business accounts, leaving him without funds in November of 2016. It became necessary to borrow money from his father to operate the market. Many business checks were declined for insufficient funds when all his

8

accounts were levied by YSC. Melvin also spent countless hours with the bank and creditors to undo the disastrous financial impact of Bouras's and CFS's fraudulent scheme.

The Court finds and concludes that Bouras's actions, individually and as an agent of CFS, were egregious and violated his fiduciary duty to Melvin as a trusted business advisor. The libel Bouras, acting as an agent of CFS, perpetuated against Arundel Market, LLC and Melvin had a shocking impact on his business and Melvin's reputation in the community. He experienced extreme despair, shame, and embarrassment in explaining the fraud he fell victim to. The Court further finds that Bouras, as an agent of CFS, deceived and misrepresented his true intentions and acted fraudulently and maliciously.

The Court also specifically finds and concludes that Melvin suffered emotional injuries and severe emotional distress that impacted his employment, business reputation, and prospective business advantage for Arundel Market, LLC. The Court notes that the enormous financial and emotional strain of this devious and horrific plan occurred during a period of time when Melvin was preparing to be married on November 19, 2016, which event should have been joyous but was marred by Melvin's distress. The Court finds the building that Arundel Market had occupied was unoccupied from November 2016 to November 2018, a period of two years, as a result of the breach of the Lease Agreement.

9

Based on all the above and all the evidence in the record, the Court hereby

**ORDERS** that Plaintiffs Robert Melvin and Arundel Market, LLC, are awarded damages

as follows to be paid by Defendant Charter Financial Services, LLC.[4]

### A. Compensatory Damages

    A.    $20,100.00 per year for breach of the Lease Agreement by Charter Financial

        Services, LLC for a period of two (2) years for a total of $40,200.00;

    B.    Replacement help at Arundel Home Builders - $1,500.00;

    C.    $8,000.00 paid to Yellowstone Capital to settle claims under the Confession

        of Judgment;

    D.    $1,500.00 in attorney fees paid to Attorney Daniel Rush to void the UCC

        filing by Yellowstone Capital;

    E.    $12,062.12 for attorney fees and costs to the firm of Libby O'Brien Kingsley

        & Champion, LLC.[5]

### B. Emotional Distress Damages

The Court finds the behavior by Bouras and CFS were egregious and undertaken

with malicious intent. Bouras, acting as agent of CFS, engaged in extreme and outrageous

conduct that manifested itself in an objective symptomology experienced by Robert

---

[4] This judgment of damages against CFS does not prohibit Plaintiffs from seeking joint and several damages against the remaining Defendants.

[5] The Plaintiff may recover attorney's fees for certain kinds of tortious conduct including breach of fiduciary duty. *Murphy v. Murphy*, 1997 ME 103, ¶ 15, 694 A.2d 932.

10

Melvin. The Court awards $10,000.00 in emotional distress damages to Robert Melvin.

### C. Punitive Damages

The Court finds that Bouras's extreme and outrageous conduct involving him and Charter Financial Services, LLC must be deterred and awards Plaintiffs $35,000.00 in punitive damages.

## CONCLUSION

For the reasons mentioned above the Court orders Judgment in favor of Plaintiffs against Defendant Charter Financial Services, LLC and awards damages totaling $108,262.12.

The Clerk is specifically directed to incorporate this Judgment Against Charter Financial Services, LLC, by reference on the civil docket pursuant to Rule 79(a) of the Maine Rules of Civil Procedure.

Dated: <u>May 30, 2025</u>

James F. Martemucci
Justice, Maine Superior Court

ENTERED ON THE DOCKET ON: 6/9/2025

11

**EXHIBIT**

**2**

STATE OF MAINE                                    SUPERIOR COURT
YORK, ss.                                         CIVIL ACTION
                                                 Docket No.  CV-2018-0003

ROBERT MELVIN and
ARUNDEL MARKET, LLC,

                    Plaintiffs,                          **ORDER ON
                                                      PENDING MOTIONS**

        v.

JAMES D. BOURAS,
DIMITRI J. BOURAS, and
CHARTER FINANCIAL SERVICES,
LLC,

                    Defendants.

Pending before the Court is Defendant Dimitri J. Bouras's ("Dimitri") second

motion to dismiss filed August 15, 2019, and Plaintiff Robert Melvin and Arundel Market,

LLC's ("Plaintiffs") Motion for Default Judgment against Defendant Dimitri J. Bouras.

For the reasons that follow, the Court construes Dimitri's second motion to dismiss as a

motion to reconsider which the Court denies. Plaintiffs' motion for default judgment is

granted.

I.      BACKGROUND

        Plaintiffs Robert Melvin and Arundel Market, LLC ("Plaintiffs") filed a nine-count

complaint in January 2018 against James D. Bouras, Dimitri J. Bouras, and Charter

RECEIVED

JUN 27 2025

Gene R. Libby, Esq.

Financial Services, LLC (together "Defendants"). The complaint seeks injunctive relief as well as compensatory and punitive damages based on allegations of fraud, breach of fiduciary duty, abuse of process, breach of contract, reputational torts, and several other causes of action.

On February 3, 2018, in lieu of an answer, Dimitri filed a motion to dismiss the action as against him. On February 21, 2018, Plaintiffs filed an opposition to Dimitri's motion to dismiss and on March 2, 2018, Dimitri filed his reply. The Court scheduled a hearing on June 11, 2018, for several outstanding issues in the case including, but not limited to, Attorney Alan Perry's request to withdraw from representation of Dimitri. After multiple continuances, the Court issued an order on March 4, 2019, denying Dimitri's motion to dismiss, granting Attorney Perry's motion to withdraw, and staying the matter for thirty (30) days from the date of the order to allow time for Dimitri to retain replacement counsel.

Because Dimitri's motion to dismiss was denied, Dimitri was required to answer the complaint, pursuant to Maine Rule of Civil Procedure 12(a). Dimitri failed to answer the complaint by the deadline. [1] Appropriately, Plaintiffs filed a motion for default judgment against Dimitri on August 12, 2019.

---

[1] To date, Dimitri has failed to file an answer to the complaint.

2

On August 15, 2019, Dimitri, now representing himself,[2] filed a second motion to dismiss the action as against him. On August 19, 2019, upon the discovery that Dimitri had filed for Chapter 13 bankruptcy (Case 19-20295), Plaintiffs withdrew their motion for default judgment recognizing that the Chapter 13 filing automatically stays the matter in the action regarding Dimitri. Considering the automatic stay, no action was taken at that time on Dimitri's second motion to dismiss.

On January 28, 2025, the Court issued a procedural order requiring Dimitri to provide a status report of the bankruptcy matter with 21 days. Dimitri failed to file a written status report. On May 7, 2025, the Court held a damages hearing only against defaulted Defendant Charter Financial Services, LLC. At the hearing, Plaintiffs presented the Court with a Bankruptcy Dismissal Notice documenting that Dimitri's Chapter 13 filing was dismissed on July 31, 2024. (Pls.' Ex. 26.)

On May 9, 2025, the Court ordered the stay as to Dimitri J. Bouras be lifted and/or vacated and Plaintiffs had twenty-one (21) days to file an opposition to Dimitri's second motion to dismiss. On May 14, 2025, Plaintiffs filed a Motion for Default Judgment against Dimitri, pursuant to M.R. Civ. P. 55(b), and on May 23, 2025, Plaintiffs filed a restated

---

[2] Parties who are self-represented are held to the same standards as represented parties. *Brown v. Thaler*, 2005 ME 75, ¶ 8, 880 A.2d 1113; *Dufort v. Bangs*, 644 A.2d 6, 7 (Me. 1994).

3

opposition to Dimitri's second motion to dismiss. Both Dimitri's second motion to dismiss and Plaintiffs' application for default judgment are now before the Court.

## II.    DISCUSSION

### A. Dimitri's Motion

As a preliminary matter, because the grounds set forth in Dimitri's second motion to dismiss[3] are essentially the same grounds set forth in his first motion to dismiss, the Court construes Dimitri's motion as a motion to reconsider. A motion for reconsideration "shall not be filed unless required to bring to the court's attention an error, omission or new material that could not previously have been presented." M.R. Civ. P. 7(b)(5). A motion to reconsider is restricted to limited situations with the intention to "deter disappointed litigants from seeking to 'reargue points that were or could have been presented to the court on the underlying motion.'" *Shaw v. Shaw*, 2003 ME 153, ¶ 8, 839 A.2d 714 (quoting M.R. Civ. P. 7(b)(5) advisory committee's note to 2000 amend.).

Dimitri's first motion to dismiss argued dismissal on the basis that the complaint did not specifically allege any wrongdoing as against Dimitri individually. The Court disagreed reading the complaint's numerous allegations made against "defendants"—in the plural—to include all three named defendants. Dimitri's second motion, now before

---

[3] Dimitri's second motion to dismiss argues dismissal on the basis that he "has never met Robert Melvin and has no knowledge of any business dealings in the complaint filed by Melvin." (Dimitri's Second Mot. Dismiss ¶ 3.)

4

the Court, has not brought to the Court's attention any error, omission, or new material that could not previously been presented. M.R. Civ. P. 7(b)(5). Accordingly, Dimitri's motion to reconsider is denied.

### B.  Plaintiffs' Motion for Default Judgment

A default can be entered by the clerk pursuant to M.R. Civ. P. 55(a) against a party who has failed to plead or otherwise defend against a claim and that fact is shown by affidavit. Here, because Dimitri failed to answer the complaint; failed to respond to the Court's January 30, 2025, Order requesting he provide the Court with a status update of his bankruptcy proceeding; and failed to respond to Plaintiffs' application for default judgment pursuant to M.R. Civ. P. 7(c), Dimitri is subject to default. M.R. Civ. P. 55(a)(1).

A party may move the court for a default judgment upon filing an affidavit satisfying Rule 55(b)(6):

> [N]o judgment by default shall be entered until the filing of an affidavit made by the plaintiff or the plaintiff's attorney, on the affiant's own knowledge, setting forth facts showing that the defendant is not a person in military service as defined in the "Service Members Civil Relief Act" of 2003, as amended, except upon order of the court in accordance with that Act, and setting forth facts showing that venue was properly laid at the place where the action was brought.

M.R. Civ. P. 55(b)(6).

Here, pursuant to Rule 55(b)(2), Plaintiffs have properly served upon Dimitri a motion for default judgment and satisfied the requirements of Rule 55(b)(6) by

submitting an affidavit setting forth that Defendant is not a minor or incompetent person, that Defendant is not in the military service, and that venue is properly laid in this County. Dimitri has failed to oppose the motion. Accordingly, Plaintiffs are entitled to a default judgment.

III.    CONCLUSION

For the foregoing reasons, the entry is:

1.  Defendant Dimitri J. Bouras's motion to reconsider (captioned as motion to dismiss) is DENIED.

2.  Plaintiffs Robert Melvin and Arundel Market, LLC's Motion for Default Judgment against Defendant Dimitri J. Bouras is GRANTED.

3.  Judgment by default is entered for Plaintiffs on all Counts of the complaint against Defendant Dimitri J. Bouras.

The Clerk is specifically directed to incorporate this Order on Pending Motions by reference on the civil docket pursuant to Rule 79(a) of the Maine Rules of Civil Procedure.

Dated: June 23, 2025

James F. Martemucci

James F. Martemucci
Justice, Maine Superior Court

ENTERED ON THE DOCKET ON: 6/24/25

6